Gary Realty Corporation v. Commissioner.
Gary Realty Corp. v. Commissioner
Docket No. 56896.
United States Tax Court
T.C. Memo 1959-76; 1959 Tax Ct. Memo LEXIS 170; 18 T.C.M. (CCH) 374; T.C.M. (RIA) 59076; April 23, 1959
*170 Held, the amount in excess of the face amount of a mortgage note executed by petitioner and insured by the Federal Housing Administration, which was paid by the mortgagee, constituted a premium received by petitioner; such premium is income to petitioner in the year received; and the amount of the premium cannot be amortized over the term of the note. Bayshore Gardens, Inc., 30 T.C. 1292, followed. Arthur L. Harrow, Esq., for the petitioner. Martin D. Cohen, Esq., and Jules W. Breslow, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The respondent determined a deficiency in income tax for the taxable year 1950 in the amount of $14,093.29. The only issue is whether the sum of $31,975, received by the petitioner in 1950 from the Brooklyn Savings Bank upon the execution of an FHA insured mortgage note, is includible in its entirety in petitioner's income for 1950, or may be amortized over the term of the mortgage note. Findings of Fact Petitioner is a New York corporation which reports its income and keeps its accounts on an accrual basis. Its principal place of business is located in New York City, New *171 York. Petitioner filed its return for the taxable year 1950 with the collector of internal revenue for the fourteenth district of New York. Petitioner was incorporated primarily for the purpose of acquiring real property and constructing houses thereon for rent pursuant to section 608 of the National Housing Act. It had all of the necessary powers incident to such general purpose, and was subject to certain limitations, as well. Since its incorporation, petitioner has engaged in the business of operating a rental housing project. Petitioner's authorized capital stock consists of 100 shares of preferred stock having a par value of $1 per share, and 100 shares of common stock without par value. The preferred stock was issued to the Federal Housing Administration (FHA) for $100 cash on or about June 1, 1949. The common stock, at all times material, has been held in equal shares (16 2/3 shares, each) by William Soling, Ada Soling (his wife), Louis Gordon, Milton Gordon (the son of Louis Gordon), Irving Seidman, and Louis Seidman (the father of Irving Seidman). At all times material, William Soling, Louis Gordon, and Irving Seidman have been the officers and directors of petitioner. *172 They are referred to hereinafter as Soling, Gordon, and Seidman. Soling, Gordon, and Seidman believed they could obtain FHA insurance for a mortgage loan of about $1,050,000 in order to finance the construction of an apartment house to be located on a site on Yellowstone Boulevard, Queens, New York, and known as Yellowstone Gardens. It was necessary to locate a financial institution which would be willing to make a loan of about the above amount. In November 1948, Gordon and Seidman requested Sonnenblick-Goldman Corporation, a mortgage brokerage firm, to arrange for an FHA insured mortgage loan of about $1,000,000 in order to finance the construction of Yellowstone Gardens. The Brooklyn Savings Bank agreed to make a loan of $1,023,200, provided FHA approval could be obtained. The Brooklyn Savings Bank also agreed to pay a premium to the petitioner of 3 1/2 per cent of the face amount of the mortgage note. Ultimately, a commitment from FHA was received to insure a mortgage loan in the amount of $1,023,200. On June 1, 1949, petitioner executed a note payable to Brooklyn Savings Bank in the amount of $1,023,200. The note was due 32 years and 7 months from its date. The note was secured *173 by a mortgage on the Yellowstone property. The interest was fixed at the annual rate of 4 per cent and the note was to be repaid in 391 equal payments of principal and interest. Construction of Yellowstone Gardens was begun on or about March 10, 1949, and was completed on or about January 23, 1950. Brooklyn advanced the entire amount of $1,023,200 to petitioner as construction of Yellowstone Gardens progressed. The last advance was made on March 15, 1950. On March 15, 1950, pursuant to formal request filed by petitioner and Brooklyn, the mortgage was finally approved by FHA for FHA insurance. During negotiations with Brooklyn, Brooklyn agreed to pay petitioner 3 1/2 per cent of the total amount loaned by Brooklyn to petitioner at such time as FHA should give its final approval of FHA insurance of the mortgage loan. Accordingly, on March 15, 1950, when FHA gave such approval, 3 1/2 per cent of the total loan of $1,023,200 or $35,812, became due and payable by Brooklyn. Also, in its negotiations with Sonnenblick-Goldman, the mortgage brokers, petitioner had agreed to pay them three-eights of 1 per cent of the face amount of the loan, upon successfully obtaining a loan with a premium. *174 In accordance with its agreement, Brooklyn, on March 20, 1950, issued its check for $35,812 for the premium it had agreed to pay. Brooklyn made its check for $35,812 payable to Sonnenblick-Goldman, the mortgage brokers. In its letter of transmittal, Brooklyn described the payment as a "finder's fee." Upon receipt of Brooklyn's check, Sonnenblick-Goldman computed its brokerage commission to be $3,837, which amount represented three-eighths of 1 per cent of the mortgage loan. Sonnenblick-Goldman retained $3,837 out of the sum of $35,812 received from Brooklyn and issued its check, dated March 21, 1950, to petitioner in the amount of $31,975. Petitioner received this check on or about March 22, 1950. In the letter of transmittal to petitioner, dated March 21, 1950, Sonnenblick-Goldman stated, in effect, that it forwarded its check to petitioner in the amount of $31,975 to cover "that portion of the bonus received from the Brooklyn Savings Bank as agreed in respect to the mortgage on" Yellowstone Gardens. Petitioner's accountants treated the sum of $31,975 as deferred income to be amortized over the life of petitioner's FHA mortgage note, and, accordingly, in 1950, a debit entry in *175 the amount of $962.88 was made in a ledger account entitled "amortization of premium," and a corresponding credit was made to petitioner's profit and loss account for 1950. Accordingly, petitioner included in its income for 1950 the amount, $962.88, as income realized in 1950. Petitioner applied for and received a ruling from the Commissioner that the mortgage note executed to Brooklyn Savings Bank was a single indebtedness and, therefore, was not subject to a documentary stamp tax which is imposed upon certain debt instruments, including bonds, under the provisions of sections 1801 and 1802 of the 1939 Code. The time and effort spent by petitioner's officers to obtain FHA approval of petitioner's mortgage was not a service rendered to the Brooklyn Savings Bank. The Commissioner determined that the entire amount, $31,975, constituted income realized by the petitioner in 1950, and he added to petitioner's taxable income the amount which petitioner had not included in its taxable income, namely, $31,012.12. The facts which have been stipulated are found as stipulated; the stipulation is incorporated herein by this reference. Opinion The Brooklyn Savings Bank paid $35,812 *176 over and above the principal amount of the FHA insured mortgage loan to petitioner. Out of this sum, Sonnenblick-Goldman retained $3,837, so that the net amount received by petitioner was $31,975. On its books, petitioner treated the $31,975 as an amount which properly could be amortized over the period of the mortgage note, and on this basis petitioner included in its income for 1950, $962.88. The respondent added the difference, $31,012.12, to petitioner's income for 1950. The first question is whether the entire amount, $35,812, represented a premium which was paid by Brooklyn Savings Bank in order to obtain an attractive investment, in the amount of 3 1/2 per cent over and above the principal amount of the mortgage loan, or a commission for services rendered by petitioner's officers, or a "kickback." It is concluded upon the entire record, that the sum of $35,812 constituted a "premium," as that term is commonly understood. It is held, further, that the above amount was not a finder's fee or a commission for services rendered by the officers of the petitioner. Under similar facts, we arrived at the same conclusions in Bayshore Gardens, Inc., 30 T.C. 1292 (on appeal *177 C.A. 2). In this case, only the net amount of $31,975, out of $35,812, the entire amount paid by Brooklyn Savings Bank, is involved. This is because, according to our understanding, the $3,837 which was retained by Sonnenblick-Goldman, the mortgage brokers, represented an expense of petitioner, namely, their brokerage commission. The next question is whether the petitioner may properly amortize the net amount of the mortgage premium, which the parties agree is $31,975, over the term of the mortgage note. On the authority of Bayshore Gardens, Inc., supra, this question is decided for the respondent. Decision will be entered for the respondent.